49 So.2d 744

NORTH BATON ROUGE PUB. CO., Inc. v. RESTER et al.

No. 40039.

Dec. 11, 1950.

Sartain & Mundinger, Baton Rouge, for plaintiff-appellant.

Bolivar E. Kemp, Jr., Atty. Gen., Carroll Buck, Asst. Atty. Gen., and John L. Madden, Asst. Atty. Gen., for defendants-appellees.

PONDER, Justice.

The plaintiff has appealed from a judgment denying the plaintiff a preliminary injunction.

J. Harvey Rester, Commissioner of the Division of Administration, published notice, in accordance with the provisions of Act No. 258 of 1944 asking for sealed proposals for the purpose of designating the Official Journal of the State for the period of July 1, 1950 through June 30, 1952. Bids were submitted by the plaintiff and the Capital City Press of Baton Rouge. The bid of the Capital City Press was accepted and the plaintiff brought proceedings against the defendant and the Governor seeking a restraining order and injunction, alleging that the plaintiff had submitted the lowest bid and that the defendant, Rester, had rejected the plaintiff's bid in contravention of Act No. 258 of 1944. The lower court, on trial of the merits, gave judgment rejecting the plaintiff's demands on the ground that the plaintiff was not a qualified bidder under the provisions of Act No. 258 of 1944 because it had not published a newspaper daily for a period of one year prior to the letting of the contract. The plaintiff appealed.

Act No. 258 of 1944 provides in Section 1 that "the printing of advertisements, public notices, proclamations and the promulgations of all laws and joint resolutions of the Legislature, and all public notices and advertising to be done by the Legislature, or the executive or other departments and institutions of the State Government, *shall be published in a daily newspaper possessing the second class mailing privilege which shall have been published in the State Capitol for at least one year prior to the letting of the contract for said printing* as provided for herein, which newspaper shall be recognized as the 'Official Journal of the State.'" The act provides that the bid shall be accompanied by a bond for $3,000. Section 5 provides that "all bids for printing as provided for under the provisions of this Act shall contain the following information: The price per square of 100 words per insertion, *and shall name a daily newspaper possessing the second class mailing privilege, which has been published in the State Capitol for at least one year prior to*

*the letting of the contract,* as the medium of publication, * * *." (Italics ours.)

It appears from the record that the plaintiff newspaper has been published continuously in the State Capitol for a period of nine years, as follows, to wit: from October 1, 1941 to January 1, 1949 it was published weekly; from January 1, 1949 to April 12, 1949 it was published twice weekly; from April 12, 1949 to November 14, 1949 it was published three times weekly; and from November 14, 1949 to the date its bid was submitted it had been published daily. It is admitted by the plaintiff that the newspaper had not been published as a daily newspaper for one year prior to the opening of the bids on April 25, 1950.

The plaintiff contends that it was a qualified bidder under the provisions of the act. The contention is based on the ground that the act requires the notices to be published in a newspaper that was being published daily at the time of the awarding of the bids and that the newspaper shall have been in existence, not necessarily as a daily, for a period of one year prior to the letting of the contract.

From a mere reading of the provision of the act requiring the notices and advertising to "be published in a daily newspaper * * * which shall have been published * * * for at least one year prior to the letting of the contract" it is apparent that the newspaper must have been published daily for one year prior to the letting of the contract. This provision of the act is clear and unambiguous. However, if it were ambiguous and we were required to seek the intent of the legislature, it could not avail the plaintiff because the undoubted purpose of the act is to give sufficient notice to the public. In order to carry out this purpose it necessarily follows that the legislature intended for the notices to be published in an established newspaper published daily for one year prior to the letting of the contract. As pointed out by the trial judge, the acceptance of the plaintiff's interpretation of the statute would render it possible to award the contract to a small weekly or monthly paper with no financial stability that had been published as a daily only for a few days before the letting of the contract and thereby defeat the very purpose of the statute.

Counsel advances several arguments, in support of plaintiff's contention, to the effect that the contract must be awarded to the lowest bidder, that the legislative intent should be sought by review of laws in pari materia, that the medium shall have been in existence for a prescribed period, that the statute refers to the medium and not the interval of publication, etc.

From our appreciation of the statute, the contract must be awarded to the lowest qualified bidder. The wording of the statute is clear and unambiguous and there is no necessity to review the laws in pari materia. We cannot agree with counsel that the wording of the statute refers to the medium and does not contemplate the prior interval of publication.

Counsel lays great stress on the fact that the statute does not contain wording to the effect of "published as such" which shall have been so published daily, etc. It is argued that if the legislature had intended that the prior existence and interval of publication requirements be the same that some language of this import would have been used. From our appreciation of the wording of the statute the prior existence and interval of publication are required for a period of one year prior to the letting of the contract. If these requirements were not to be treated in the same manner some language would have been used to show such intention on the part of the legislature. The legislature has made no distinction in these requirements and we are not at liberty to draw a distinction when none is provided in the statute.

For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.